UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SAJID KHAN,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ et al.,<br><br>Respondents. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 26-cv-12916-ADB |

**ORDER**

BURROUGHS, D.J.

Currently pending before the Court is Petitioner Sajid Khan's ("Khan") amended petition for a writ of habeas corpus. [ECF No. 14]. For the following reasons, the amended petition is **GRANTED**.

## I. BACKGROUND

Petitioner Sajid Khan is from Pakistan and has been a lawful permanent resident of the United States for over ten years. [ECF No. 1 ¶ 1]. He is a married to a U.S. citizen, with whom he has three U.S. citizen children. [Id.]. "He has no criminal convictions . . . and has not traveled outside the United States since obtaining his permanent resident status." [Id.]. "[H]e ha[s] worked at the same convenience store since 2019 . . . ." [Id. ¶ 7]. On May 14, 2026, USCIS denied Khan's naturalization application on the basis that he had "given false testimony under oath in an attempt to obtain an immigration benefit," [ECF No. 14-2 at 8, 13], and on June 15, 2026, he was detained by Immigration and Customs Enforcement ("ICE") officers at his residence in Ipswich, Massachusetts. [ECF No. 1 ¶¶ 1, 2].

On June 26, 2026, Khan filed his initial petition for a writ of habeas corpus, in which he sought immediate release from immigration detention, claiming that the government had no lawful basis for his detention, particularly given his status as a lawful permanent resident. [ECF No. 1 ¶¶ 13–17]. Thereafter, Khan was provided with a copy of a Notice to Appear that he had previously signed on June 15, 2026, which initiated removal proceedings against him under 8 U.S.C. § 1229(a). [ECF No. 14 ¶¶ 3–4 & n.1]. On July 14, 2026—approximately one month after his arrest and eighteen days after his original petition was filed—Khan received a bond hearing in the Chelmsford Immigration Court. See [ECF No. 14-1 at 1]. At the hearing, Respondents presented the IJ with the immigration officer's notes from Khan's naturalization interview (labeled "CARRP Interview Notes"), [ECF No. 14-2 at 18–32], the notice of denial of his naturalization application (dated May 14, 2026), [id. at 8–14], and a Form I-213, the charging document that set out the basis for his removability, [id. at 4–7].

According to the Form I-213, in 2015, Khan filed an immigrant visa application in which "he denied ever being arrested or convicted for any offense." [ECF No. 14-2 at 5]. Khan "again denied any criminal activity or prior arrests" in his naturalization application, filed in 2018, and he later "reaffirmed these denials under oath" at his naturalization interview. [Id. at 5]. Prior to his naturalization interview, however, on January 15, 2019, at an interview with the Federal Bureau of Investigations ("FBI") and Homeland Security Investigations ("HSI"), Khan admitted to two arrests in Pakistan that occurred years earlier. [Id. at 5]. When confronted with this information during his naturalization interview, Khan stated that in 2005 or 2006, [id. at 11], he was arrested "after a fight in a restaurant between two college political parties," [id. at 5], and "detained by the police for approximately 2-3 days," [id. at 6], which he later revised to closer to "14-15 days," [id.]. Khan also stated that sometime around 2009, the Pakistani Army held him in

custody for several months because he had the same name as somebody they suspected was a member of the Taliban. [Id. at 6, 11].[1] When asked why he had previously represented that he did not have prior arrests, Khan claimed that he thought the questions about prior arrests were limited to the past five years. [Id. at 11–12].

Khan presented his own portfolio of evidence at the hearing, which he contends established that:

> he had been a permanent resident for over ten years; that he had filed taxes each year; that his wife, three children, and numerous in-laws were all US citizens; that one of his daughters suffers from an incurable condition that causes tumors on her brain, spinal cord, and nervous system; that he was actively involved in his children's lives and education; that he had lived in the same home with his family since 2021; that, in removal proceedings, he would be contesting DHS['s] allegations and would be eligible for a waiver of any past misrepresentations; that his demonstrated actions were inconsistent with any sympathy to the Taliban; that he had been fully cooperative with FBI agents who wanted to ask him for information; and that he had worked in the same convenience store since 2019, where his supervisor and customers thought highly of him.

[ECF No. 14 at 3 (citing [ECF No. 14-3])].

The IJ denied bond. [ECF No. 14-1 at 1]. The IJ acknowledged that Petitioner had been a lawful permanent resident for many years and had no criminal record but expressed concern about his truthfulness and speculated that Petitioner could be concealing details of his arrest and detention in Pakistan in 2009. [ECF No. 16, 846_7-14-2026-1-01-31_PM ("1-01-31_PM Recording")]. Although she ultimately found that he was not a danger, the IJ did find that Khan was a flight risk on the basis of his prior misrepresentations to the government, and that no bond

[1] Counsel for the government noted, however, that she had no actual documents that showed that Khan had ever been arrested in Pakistan or that he had ever been associated with the Taliban and indicated that the FBI was unlikely to release any records of their conversations with Khan for use in immigration court. [ECF No. 16, 846_7-14-2026-9-41-12_AM at 12:23–12:50].

amount or other alternative to detention would ameliorate his risk of flight. [ECF 14-1 at 1]; see generally [ECF No. 16, 1-01-31_PM Recording].

On July 17, 2026, Khan filed an amended petition, [ECF No. 14], contending that the IJ's flight-risk determination was based on insufficient evidence and improper "suspicion of unknown information" outside the record, [id. ¶ 51], such that the bond decision was constitutionally deficient and that his continued detention was therefore in violation of his due process rights, [id. ¶¶ 44–53]. On July 28, 2026, Respondents filed an opposition to the amended petition, [ECF No. 18], contending that ICE met its burden of proof of demonstrating that Petitioner is a flight risk, [id. at 9–10], that this Court lacks jurisdiction to review the IJ's bond decision, [id. at 5–9], and that Petitioner failed to exhaust available administrative remedies, [id. at 10–13].

## II. LEGAL STANDARD

By statute, "the Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under [§ 1226] regarding the . . . denial of bond or parole" of any noncitizen. 8 U.S.C. § 1226(e). This provision strips federal courts of jurisdiction to hear challenges to an "IJ's discretionary decision to keep [a noncitizen] in detention." Pensamiento v. McDonald, 315 F. Supp. 3d 684, 689 (D. Mass. 2018). It does not, however, deprive them of jurisdiction to hear constitutional challenges to "the extent of the Government's detention authority under the 'statutory framework' as a whole." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (quoting Jennings v. Rodriguez, 583 U.S. 281, 295–96 (2018)).

In exercising that jurisdiction, the First Circuit has held that requiring non-citizens to prove that they do not pose a danger to the community or a flight risk in order to be released on

bond violates the Fifth Amendment's Due Process Clause. Hernandez-Lara, 10 F.4th at 23–24, 39, 41. Rather, as relevant here, due process requires that the government bear the burden of proving that a noncitizen is a flight risk by a preponderance of the evidence. Id. at 41.

District courts in the First Circuit have reviewed immigration judges' bond determinations for compliance with the constitutionally mandated burden of proof. See, e.g., Garcia v. Hyde, 817 F. Supp. 3d 112, 127–31 (D.R.I. 2025) (granting habeas relief); Mayancela Mayancela v. FCI Berlin, No. 25-cv-00348, 2025 WL 3215638, at *6–7 (D.N.H. Nov. 18, 2025) (denying habeas relief); Dos Reis v. Vitello, No. 25-cv-10497, 2025 WL 1043434, at *2–3 (D. Mass. Apr. 8, 2025) (denying habeas relief). To show that an immigration judge failed to apply the correct standard, a noncitizen must either "point to the language of the immigration judge's opinion or demonstrate that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (quoting Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)).

Given the highly circumscribed nature of judicial review in this context, courts cannot override an immigration judge's bond decision simply because they "might have reached a different result if considering the issue de novo." Massingue v. Streeter, No. 19-cv-30159, 2020 WL 1866255, at *5 (D. Mass. Apr. 14, 2020). Rather, habeas relief is appropriate only if the immigration judge's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz, 384 F. Supp. 3d at 144 (quoting Pratt v. Doll, No. 17-cv-01020, 2019 WL 722578, at *4 (M.D. Pa. Feb. 20, 2019)).

When a petitioner challenges his immigration bond hearing on constitutional grounds, "no statute requires exhaustion." Garcia, 817 F. Supp. 3d at 125. Nonetheless, courts retain discretion to require petitioners to exhaust administrative remedies under "common-law

exhaustion" principles. Brito v. Garland, 22 F.4th 240, 255–56 (1st Cir. 2021). In applying these principles, "the Court may find exhaustion to be unnecessary where 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim.'" Garcia, 817 F. Supp. 3d at 125 (quoting Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997)).

## III. DISCUSSION

### A. Exhaustion

The Court first considers Respondents' arguments relating to exhaustion of administrative remedies. Although they acknowledge that exhaustion is not statutorily mandated in this context, Respondents argue that the Court should exercise its discretion to require Khan to appeal the IJ's bond denial to the Board of Immigration Appeals ("BIA") before considering his habeas petition. [ECF No. 18 at 11]. Khan argues that the Court should not require him to exhaust administrative remedies because he is "being irreparably harmed by his ongoing unlawful detention without a constitutional bond hearing," and requiring an appeal to the BIA would "result in extreme delay and significant hardship" given the processing delays the BIA is facing. [ECF No. 14 at 6].

The Court agrees with Khan that he should not be required to appeal to the BIA prior to seeking habeas relief. As noted above, the archetypal situation where "a court may consider relaxing the [exhaustion] rule" is one where the petitioner will "suffer irreparable harm if unable to secure immediate judicial consideration of his claim," Portela-Gonzalez, 109 F.3d at 77, and particularly where the petitioner is "challenging [his] incarceration . . . or the ongoing deprivation of some other liberty interest." Brito v. Garland, 22 F.4th 240, 256 (1st Cir. 2021) (quoting Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)). The loss of liberty is, of course, a "severe form of irreparable injury." Ferrara v. U.S., 370 F. Supp. 2d 351, 360 (D. Mass. 2005)

(citing Short v. United States, 344 F.2d 549 (D.C. Cir. 1965) (Bazelon, C.J. dissenting)). Given Khan's ongoing loss of liberty, and the delays currently experienced by the BIA, see Gomes v. Hyde, 804 F. Supp. 3d 265, 272 (D. Mass. 2025) (citing Rodriguez v. Bostock, 779 F.Supp.3d 1239, 1248–49 (W.D. Wash. 2025)) ("the average processing time for [BIA] bond appeals exceeded 200 days in 2024"), the Court finds that requiring administrative exhaustion is not appropriate here.

**B. Merits**

Based on the Court's review of the evidence before the IJ and the recording of Khan's bond hearing, [ECF No. 16], the IJ's decision failed to satisfy the minimum requirements of due process, because her conclusion that Khan was a flight risk rested entirely on doubts about his honesty to the United States government in connection with his citizenship application, without articulating how or why his alleged misstatements made him a risk of flight, engaging with the evidence offered by Khan concerning his extensive familial and professional ties to the area, or explaining why any flight risk could not be mitigated by less-restrictive alternatives.

It appears that the IJ's sole reason for denying Khan bond as a flight risk was that he made false statements concerning his arrests in Pakistan in 2005 or 2006 and 2009, and the IJ's related speculation about "what else he could be hiding." That evidence may have established that Khan is dishonest, but it is not clear how it bears in any meaningful way on the likelihood that Khan was, in fact, a flight risk. The IJ did not articulate any reasoning linking Khan's honesty in connection with the questions asked about his 2005-2009 arrests to the likelihood that he would abscond if released from custody, and the record provides no colorable basis for inferring such a risk. Id. Thus, the evidence relied upon by the IJ "could not—as a matter of

law—have supported the immigration judge's decision to deny bond" based on a risk of flight. Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240).

The IJ also failed to meaningfully engage with the substantial body of evidence presented by Khan relevant to whether he was a flight risk at the bond determination. "While [immigration judges] 'need not discuss ad nauseam every piece of evidence,' they 'may not simply ignore substantial testimonial and documentary proof,'" Garcia, 817 F. Supp. 3d at 120 (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 530 (1st Cir. 2023)), and "the logical underpinnings" of their decisions, at least, must be "clear from the record," López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025) (quoting Rivera-Medrano v. Garland, 47 F.4th 29, 39 (1st Cir. 2022)). Here, it does not appear from the record that the IJ engaged in any meaningful weighing of the evidence that Khan is not a risk of flight, including that Khan has been a lawful permanent resident with strong ties to family and community for over ten years, that he is married to a U.S. citizen and has three U.S. citizen children, that he has had the same job since 2019 and the same Massachusetts residence since 2021, and that he has consistently paid taxes and complied with U.S. laws.

Further, the record before the Court does not reflect any meaningful consideration of alternatives to detention. There was no consideration of monetary bond amounts, electronic monitoring, sponsor supervision, or other less restrictive alternatives. See Costa v. McDonald, No. 25-cv-13469, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026) (ordering renewed bond hearing because "[t]he Immigration Judge's failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient"). After careful review, the Court concludes that the IJ's decision—which rested on a conclusion about Khan's honesty, rather than his risk of flight;

ignored relevant evidence; and failed to consider alternatives to detention—was "so arbitrary" as to "offend fundamental tenets of due process." Diaz Ortiz, 384 F. Supp. 3d at 144 (quoting Pratt, 2019 WL 722578, at *4).

### C. Remedy

The Court further concludes that the appropriate remedy is release. Courts in this Circuit and others have regularly ordered immediate release of petitioners who received constitutionally inadequate bond hearings where the evidence is insufficient as a matter of law to support the petitioner's continued custody, rendering a renewed bond hearing futile. See, e.g., Loja v. Moniz, No. 26-cv-11826, ECF No. 10, at *5–6 (D. Mass. Apr. 28, 2026) (ordering immediate release where dangerousness determination was based solely on improper reliance upon charging document); Garcia, 817 F. Supp. 3d at 130–31 (ordering immediate release where "sole basis" for flight risk determination was inconsistent evidence of an unspecified arrest warrant against petitioner); España v. Nessinger, No. 26-cv-014, 2026 WL 821788, at *13 (D.R.I. Mar. 25, 2026) (ordering immediate release where "the evidence that the IJ relied on could not have, as a matter of law, supported her decision to deny [petitioner's] bond request"); Hechavarria, 358 F. Supp. 3d at 243 (ordering immediate release where past conviction was legally insufficient to prove that future dangerousness was "highly probable"); Zheng v. Rokosky, 826 F. Supp. 3d 545, 562 (D.N.J. 2026) (ordering immediate release where "the record before the Court is entirely devoid of any individualized justification for Petitioner's continued detention").

Here, the IJ already concluded that the record before the immigration court could not support a finding of dangerousness, and, as this Court has now explained, the IJ's flight-risk finding was not meaningfully tied to the evidence before her and was therefore constitutionally

inadequate. Accordingly, another bond hearing would be futile, and the Court finds that immediate release is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's amended petition for a writ of habeas corpus, [ECF No. 14], is **GRANTED**. Respondents are **ORDERED** to release Petitioner immediately, no later than 7:00 p.m. today. This order is without prejudice to Respondents requiring Petitioner to comply with reasonable conditions of supervision upon release, provided that such conditions are imposed, and written notice to Petitioner is provided, within seven days of this order. Respondents are **ORDERED** to file a status report within seven days of this order confirming their compliance with this order.

The clerk is directed to enter judgment in favor of Petitioner.

**SO ORDERED.**

August 31, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE